UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOYCE CASTRO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4: 17 CV 2037 DDN |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Joyce Castro for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born on December 7, 1950 and was 65 years old at the time of her hearing. She filed her application on October 21, 2013, alleging a February 15, 2013 onset date. (Tr. 120, 479, 665.) She alleged disability due to high blood pressure, diabetes, leaking heart valve, high cholesterol, asthma, chronic obstructive pulmonary disease (COPD), depression, laryngitis, and a heart murmur. (Tr. 337.) Her application was denied, and she requested a hearing before an ALJ. (Tr. 239-49.)

On April 13, 2016, following a hearing, an ALJ found that plaintiff was not disabled as defined in the Act. (Tr. 120-29.) She moved the Appeals Council to allow her to present new and material evidence, medical records from Mercy Hospital-Washington

from November 12, 2013 to November 5, 2015. (Tr. 9.) On May 19, 2017, the Appeals Council denied her request for review, starting that it found no reason under the rules to review the ALJ's decision. (Tr. 1-5, 295-98.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical history relevant to this appeal. On October 28, 2013, plaintiff was seen at Mercy Hospital to establish care. She stated that she was applying for disability. Deborah Beste, N.P., examined plaintiff and diagnosed hypertension, diabetes, asthma, mitral valve prolapse, tobacco use disorder, marijuana abuse, depression, gastro esophageal reflux disease (GERD), rib pain, and chronic laryngitis. She had smoked a pack of cigarettes every day for 46 years. She was prescribed Celexa, an antidepressant, and Lisinopril, for high blood pressure, and instructed to return in two weeks. (Tr. 420-34.)

Plaintiff returned to Mercy Hospital on November 14, 2013 for follow-up and complaints of hoarseness. Her blood pressure was elevated and needed better control. A laryngoscopy was ordered. She also complained of headaches and some chest pressure. (Tr. 671-77.) She was seen again on November 20, 2013. She stated that she had stopped taking Celexa because it made her nauseated, that she did not want to take anything more for her depression, and that she did not want to go to counseling. (Tr. 665.) On July 28, 2014, she was seen for an earache. Her blood pressure was elevated. She reported that she had run out of her blood pressure medication months earlier. She was restarted on Atenolol, used to treat high blood pressure. (Tr. 638-49.)

On January 13, 2014, plaintiff underwent a consultative psychological evaluation by Paul Rexroat, Ph.D., a psychologist, for her depression. (Tr. 501-04.) She reported that anxiety was not a problem for her and that she had never received treatment from a mental health professional. She reported feeling sad, lonely, and worthless, as well as being easily irritated even though she still liked being around other people. She described

being forgetful and having trouble concentrating. She believed she had been intermittently depressed for fifteen years. (Tr. 502.)

Upon examination, plaintiff was not suspicious, anxious, tense, or weepy. She exhibited a normal range of emotional responsiveness and a normal affect, and was alert and cooperative. She had normal, coherent, and relevant speech, and exhibited adequate social skills. She was well oriented to person, place, time, and situation. She appeared to have normal memory and average intelligence. She was able to solve simple math problems, count backwards, and perform normal abstract verbal reasoning. (Tr. 502-04.)

Dr. Rexroat believed plaintiff had mild limitations in activities of daily living and in social functioning. He indicated that plaintiff was able to sustain concentration, persistence, and pace with simple tasks. Dr. Rexroat diagnosed moderate recurrent major depression and cannabis abuse. He assigned plaintiff a Global Assessment of Functioning (GAF) score of 62, indicating mild symptoms. He concluded her prognosis was "guarded" because of her depression. (Tr. 503-04.)

On January 13, 2014, a carotid duplex study, an ultrasound that looks for blockages in the carotid arteries, showed mild atherosclerosis in the left and right proximal internal carotid arteries. (Tr. 966.) Following an abnormal EKG, additional heart imaging revealed normal systolic function. (Tr. 958.)

On January 14, 2014, plaintiff underwent a laryngoscopy for excision of a bilateral cord polyp. (Tr. 945, 948-49, 951.)

On January 25, 2014, plaintiff saw Raymond Leung, M.D., an internist. Dr. Leung diagnosed hypertension, diabetes, heart murmur, neck and back pain with decreased range of motion in the cervical and lumbar spines, and asthma and COPD. Dr. Leung did not provide an opinion regarding plaintiff's physical abilities. (Tr. 507-10.)

Cervical spine imaging on March 19, 2014, showed mild to moderate multilevel degenerative change, and mild reversal of the normal cervical lordosis. Lumbar imaging revealed mild multilevel degenerative change. (Tr. 515-16.)

On March 21, 2014, state-agency medical consultant, Kyle W. Devore, Ph.D., a clinical psychologist, reviewed the record. He opined that plaintiff had mild restrictions in activities of daily living; no difficulties maintaining social functioning; mild difficulties maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. Dr. Devore concluded that plaintiff did not have a severe mental impairment because she had no more than mild limitations in any functional area. (Tr. 228-30.)

On September 2, 2014, plaintiff saw Arjun Singh, M.D., an internist, for anxiety and back pain. Plaintiff described her anxiety as an 8/10 with medication and 10/10 without medicine. Dr. Singh prescribed Xanax, a short acting drug used to treat anxiety, and recommended that she obtain counseling and treatment with a psychiatrist. Plaintiff saw Dr. Singh every two weeks during September and October 2014 for anxiety. (Tr. 538-543.)

A coronary angiography on September 5, 2014, demonstrated severe two vessel coronary artery disease. She received percutaneous coronary intervention, a non-surgical procedure used to treat narrowing of the coronary arteries of the heart found in coronary artery disease, with excellent results. (Tr. 912, 925.)

Plaintiff sought emergency treatment on October 20, 2014, for chest pain, anemia, and gastrointestinal bleeding. (Tr. 852.) An upper G.I. endoscopy confirmed iron deficiency anemia secondary to chronic blood loss. She received a transfusion and intravenous Protonix, used to treat heartburn. She was diagnosed with GERD. (Tr. 772, 777, 815.)

On November 24, 2014, plaintiff reported having anxiety spells every few days for several months. Dr. Singh continued her on Xanax and saw plaintiff on a monthly basis through October 23, 2015. (Tr. 519-22, 526-37.)

An echocardiogram administered on September 16, 2015, revealed, among other things, normal left ventricle size and function, with an estimated ejection fraction, a measurement of the percentage of blood leaving the heart each time it contracts, of 60%,

which is considered normal; impaired relaxation; mild left atrial enlargement; and thickened aortic valve with severe stenosis or narrowing. (Tr. 754.)

A heart catheterization on September 25, 2015, demonstrated moderate aortic stenosis or narrowing; patient stents, systemic hypertension; mildly elevated filling pressures; and anemia. (Tr. 721.)

On November 5, 2015, a small intestinal endoscopy confirmed iron deficiency anemia and gastrointestinal hemorrhage. (Tr. at 710, 714.) A heart catheterization of March 24, 2016, revealed moderate to severe aortic stenosis, normal cardiac output, one vessel coronary artery disease, hypertension, and hyperlipidemia. (Tr. 142.)

On January 19, 2016, x-rays showed minimal carpal metacarpal joint degenerative disease, osteopenia of the left hand, and moderate thumb carpal metacarpal joint degenerative disease and osteopenia on the right hand. (Tr. 986-87.)

**ALJ Hearing**

On December 22, 2015, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 183-222.) She is unable to work due to uncontrolled blood pressure, shortness of breath, dizziness, neck and back pain, and legs giving out when standing for more than 15 to 20 minutes and when walking without support. She is also unable to work due to difficulties with heart stents, diabetes, and asthma. She experiences anxiety and stress, and has taken Xanax three or four times per day for the past one to two years. She cares for her brother who is in home hospice, causing anxiety and stress. Her medications make her tired and dizzy. (Tr. 197-207.)

A vocational expert also testified at the hearing. The VE testified that plaintiff's past work included administrative assistant, which is sedentary and skilled; receptionist, which is sedentary and semi-skilled; and secretary, which is sedentary and semi-skilled. (Tr. 190-191.)

## III. DECISION OF THE ALJ

On April 13, 2016, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. at 120-29.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 15, 2013, her alleged onset date. At Step Two, the ALJ found that plaintiff had the following severe impairments: mitral valve prolapse; coronary artery disease (CAD); asthma; anemia; and COPD. The ALJ also found that plaintiff had the non-severe impairments of depression, anxiety, diabetes, hypertension, hyperlipidemia, and degenerative changes in her spine and thumbs. At Step Three, the ALJ found that plaintiff's impairments did not meet or medically equal the severity of any impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (Tr. 122-25.)

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. section 404.1567(a) except that she was limited to frequent reaching, handling, and fingering bilaterally. At Step Four, the ALJ concluded that plaintiff could perform her past relevant work as an administrative assistant, receptionist, and secretary. Accordingly, the ALJ determined that plaintiff was not disabled under the Act. (Tr. 124-29.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings apply the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial

evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently.  See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled.  20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW).  Id. § 404.1520(a)(4)(iv).  The claimant bears the burden of demonstrating she is no longer able to return to her PRW.  Pate-Fires, 564 F.3d at 942.  If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## V.  DISCUSSION

Plaintiff argues the ALJ erred (1) in concluding that her depression and anxiety were non-severe medically determinable impairments at Step Two and (2) in failing to explain her finding that she could perform sedentary work.  She argues that even assuming

that her impairments were not severe, the ALJ erred in failing to include any limitation for her mental impairments in his RFC. This court disagrees.

**A. Step Two Analysis**

At Step Two of the evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the burden of proving her impairment or combination of impairments is severe, but the burden is not a heavy one, and any doubt concerning whether the showing has been made must be resolved in favor of the claimant. Id.; Dewald v. Astrue, 590 F. Supp.2d 1184, 1200 (D.S.D. 2008). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard. . . ." Kirby, 500 F.3d at 707.

A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(c), 404.1521. An impairment is not severe if it amounts to only a slight abnormality and does not significantly limit the claimant's physical or mental ability to do basic work activities. Kirby, 500 F.3d at 707; 20 C.F.R. § 404.1521(a). Basic work activities concern the abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 404.1521(b). Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. Id. The sequential evaluation process terminates at Step Two if the impairment has no more than a minimal effect on the claimant's ability to work. Kirby, 500 F.3d at 707; Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989).

The regulations set forth a technique for an ALJ to determine whether a claimant's mental impairments are severe. See 20 C.F.R. § 404.1520a. The ALJ considers the following four functional areas: (1) activities of daily living; (2) social functioning; (3)

concentration, persistence, or pace; and (4) episodes of decompensation. See id. § 404.1520a(c)(3). A mental impairment is not severe if it results in no more than mild limitations in the first three areas and none in the fourth area. See id. § 404.1520a(d)(1).

Here, the ALJ found that plaintiff had no limitations in activities of daily living. (Tr. 122.) "Activities of daily living" include activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. Here, plaintiff handled her own personal care, cooked, drove, read, socialized with others, went out alone, shopped, cleaned her house, washed laundry, and cared for her seriously ill brother. (Tr. 122, 205, 325–29, 503.) That evidence supports the finding that plaintiff had no limitations in activities of daily living.

The ALJ next found that plaintiff had no limitations in social functioning. (Tr. 123.) Social functioning includes the ability to get along with others; an individual might demonstrate impaired social functioning by a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C. As the ALJ noted, plaintiff was pleasant and friendly at appointments with her treating physician. (Tr. 123, 578.) She did not appear nervous during a consultative examination with Paul Rexroat, Ph.D., and exhibited adequate social skills. (Tr. 502-03.) She was also cooperative and had a normal mood and affect when seen by her other providers. (Tr. 508, 561, 606, 642, 729, 843.) Additionally, plaintiff enjoyed being around others, had friends, socialized with family members, and went out in public. (Tr. 123, 328-29, 502-03.) She got along well with authority figures and had never been terminated due to interpersonal problems. (Tr. 329, 331, 504.) Accordingly, the ALJ found that plaintiff had no limitations in social functioning.

With respect to concentration, persistence, or pace, the ALJ found that plaintiff had no limitations. (Tr. 123.) Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and

appropriate completion of tasks commonly found in work settings. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C. The ALJ noted that plaintiff drove, read, used a computer, handled her own finances, and cared for her ill brother. (Tr. 123, 205, 325–29, 503.) At Dr. Rexroat's consultative examination, plaintiff displayed normal memory and average intelligence; solved simple problems quickly; and counted backwards. (Tr. 503.) At other examinations, she displayed intact memory, normal thought content, and normal fund of knowledge. (Tr. 508, 561.) The above evidence supports the ALJ's finding that plaintiff had no limitations in concentration, persistence, or pace.

The ALJ then found that plaintiff had no episodes of decompensation of extended duration. (Tr. 123.) Because the ALJ found no limitations in the first three functional areas, and no episodes of decompensation, the ALJ properly determined that plaintiff's mental impairments were non-severe.

The fact that plaintiff received only conservative and sporadic treatment also supports the determination that her mental impairments were not severe. (Tr. 126.) The ALJ noted plaintiff stopped taking Celexa, an antidepressant, after only one month and declined to try another medication or receive counseling. (Tr. 126, 665.) She did not seek further treatment until September 2014, nearly one year later. (Tr. 126, 543.) Thereafter, her treatment consisted only of anxiety management with Xanax by her primary care doctor, Arjun Singh, M.D. (Tr. 126, 519–43.) Plaintiff did not seek care from a psychiatrist despite Dr. Singh's recommendation to do so. (Tr. 126, 543.)

It was reasonable for the ALJ to conclude that plaintiff would have received treatment from a mental-health professional if her conditions were truly severe. See Kirby v. Astrue, 500 F.3d 705, 708–09 (8th Cir. 2007) (ALJ properly determined that the claimant's mental impairment was not severe, in part, because the claimant received no formal treatment by a psychiatrist, psychologist, or other mental health professional over any long-term basis); Page v. Astrue, 484 F.3d 1040, 1044 (8th Cir. 2007) (affirming ALJ's determination that mental health issues were not severe where claimant sought very limited treatment). The ALJ's finding was further supported by the opinion of Kyle

DeVore, Ph.D., state-agency medical consultant, who opined that plaintiff had no more than mild limitations in any area of functioning and therefore did not have a severe mental impairment. (Tr. 228-30.)

In sum, the ALJ properly found that plaintiff's anxiety and depression were non-severe impairments based upon plaintiff's daily activities, including caring for her ill brother, the clinical findings from her mental-status examinations, her conservative course of treatment, and the opinion of Dr. DeVore.

Plaintiff also argues that the ALJ failed to consider her continued need for prescription medication. Plaintiff is incorrect. The ALJ acknowledged that plaintiff was prescribed Xanax by Dr. Singh. (Tr. 126.) However, the mere fact that plaintiff took medication does not mandate a finding of severity. Courts have affirmed an ALJ's finding that a claimant's mental impairment was non-severe despite the fact that a claimant took medication. See, e.g., Buckner v. Astrue, 646 F.3d 549, 557 (8th Cir. 2011). Moreover, as noted above, plaintiff went without medication for significant portions of the relevant period. Dr. Singh consistently noted that plaintiff's anxiety was stable and did not frequently alter her medication. (Tr. 518–43). Additionally, plaintiff often presented with a normal mood and affect at appointments with her other providers. (Tr. 508, 561, 606, 642, 729, 843.) In short, the fact that plaintiff took medication during the relevant period does not undermine the ALJ's analysis or necessarily support a finding that she had more than mild limitations in any of the relevant functional categories.

As discussed above, plaintiff's daily activities and conservative course of treatment undermined her allegations. (Tr. 126.) The ALJ noted that plaintiff stopped working for reasons unrelated to her health and sought employment during the period she claimed to be disabled, belying her allegations of disabling symptoms. (Tr. 126, 191-92, 338, 479.) Accordingly, the ALJ was not required to credit plaintiff's subjective statements.

Plaintiff also argues the ALJ erred in citing her lack of inpatient psychiatric treatment because inpatient hospitalization is not a requirement of disabling mental impairments. However, the ALJ did not require that plaintiff have a history of

hospitalizations or inpatient treatment, rather the ALJ simply found it significant that plaintiff had received only conservative treatment. The ALJ also noted that plaintiff stopped taking antidepressant medication after a very short period, that she had gaps in treatment, and that she had not received care from a specialist. (Tr. 126.)

Here, plaintiff, who bears the burden of proving a severe impairment, cites no credible evidence that she had more than mild limitations in any area of functioning or any episodes of decompensation. This Court concludes the ALJ properly found plaintiff's mental impairments were not severe.

### B. Medical Opinions of Record

Plaintiff next argues that even if the ALJ was correct in concluding that her impairments were not severe, the ALJ erred in failing to include any limitation for her mental impairments in his RFC. She argues that the ALJ's RFC was inconsistent with the opinion of Dr. Rexroat, consultative psychological examiner, whose opinion was given great weight by the ALJ.

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of her limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. § 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (1996). The Commissioner uses medical sources to "provide evidence" about several factors, including

RFC, but the "final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ determined that plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. section 404.1567(a) except that she was limited to frequent reaching, handling, and fingering bilaterally. (Tr. 124.)

Dr. Rexroat opined that plaintiff had mild limitations in activities of daily living and in social functioning. He believed that plaintiff was able to sustain concentration, persistence, and pace with simple tasks. He assigned a GAF score of 62, indicating mild symptoms. (Tr. 503-04.) The ALJ gave "great," but not controlling weight, to Dr. Rexroat's opinion. (Tr. 127.)

Plaintiff does not assert the ALJ erred in giving significant weight to Dr. Rexroat's opinion. Rather, she argues that the ALJ erred in not adopting his opinion that she was limited to simple tasks or in explaining why she rejected that limitation.

Even assuming arguendo that Dr. Rexroat intended to limit plaintiff to only simple tasks, the ALJ did not err. An ALJ is not required to adopt all the limitations of any medical opinion. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (ALJ does not need to adopt the entirety of a medical opinion). And the fact that the ALJ gave great weight to Dr. Rexroat's opinion does not mean that she adopted it in toto. See Fischer v. Colvin, No. 2:14 CV 104 ACL, 2016 WL 1170972, at *7 (E.D. Mo. Mar. 25, 2016) (although the ALJ assigned "great weight" to a medical opinion, the ALJ was not obligated to adopt every limitation contained therein).

Moreover, other portions of the ALJ's decision explain why she found that plaintiff was not limited to performing only simple tasks. The ALJ noted that plaintiff drove, cared for her seriously ill brother, read, used a computer, and handled her own finances. (Tr. 123, 205, 325-29, 503.) During Dr. Rexroat's examination, plaintiff displayed normal memory and average intelligence, quickly solved simple problems, and counted backwards. (Tr. 503.) Moreover, objective findings from Dr. Singh's treatment notes do not reflect any deficiencies in concentration, persistence, or pace. (Tr. 518-43.) Plaintiff

also displayed intact memory, and normal thought content and fund of knowledge at other examinations. (Tr. 508, 561.) The record evidence supported the finding that plaintiff was not limited to performing only simple tasks. Accordingly, the ALJ properly declined to limit plaintiff to performing only simple tasks.

      **C.     Dr. DeVore's Opinion.**

As noted above, Dr. DeVore, a state-agency medical consultant, found that plaintiff did not have a severe mental impairment because she had no more than mild limitations in any functional area. Specifically, Dr. DeVore believed that plaintiff had mild restrictions in activities of daily living; no difficulties maintaining social functioning; mild difficulties maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (Tr. 228-30.) The ALJ gave great weight to Dr. DeVore's opinion because it was consistent with the evidence as a whole. (Tr. 127.)

Plaintiff contends the ALJ erred in failing to include any work-related restrictions to account for Dr. DeVore's opinion that she was mildly limited in her activities of daily living and in maintaining concentration. The court disagrees.

The Commissioner's rulings recognize that, although "a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities," it might impose limitations when considered with a claimant's other impairments. See SSR 96-8p. Here, the ALJ specifically acknowledged that she was required to consider plaintiff's non-severe impairments in formulating her RFC and stated that she considered all of plaintiff's credible symptoms. (Tr. 124-25.) However, the ALJ properly found that plaintiff's mild mental limitations, as reflected in Dr. DeVore's opinion, did not result in any work-related restrictions. Further, the absence of an RFC assessment from Dr. DeVore reflects that the ALJ did not believe that plaintiff's mild limitations imposed any work related limitations. (Tr. 228-30.)

Moreover, the ALJ's finding was consistent with the majority of courts in this Circuit, which have generally held that a mild limitation in an area of mental functioning requires no corresponding limitation in the RFC. See, e.g., Young v. Colvin, No.

4:13CV426 CDP, 2014 WL 942942, at *15 (E.D. Mo. Mar. 11, 2014) (the claimant's non-severe mental impairments did not impose any work-related limitations).

In sum, the ALJ properly considered all of plaintiff's impairments in formulating her RFC but did not believe that plaintiff's mild mental health symptoms imposed any work-related limitations of functioning.

### D. Residual Functional Capacity

The ALJ found that plaintiff had various severe and non-severe physical impairments, including mitral valve prolapse, coronary artery disease (CAD), asthma, anemia, COPD, hypertension, hyperlipidemia, and degenerative changes in her spine and thumbs. (Tr. 122, 125.) Plaintiff argues that the ALJ did not rely upon any medical evidence to support her RFC finding as to her limitations because there was no supporting medical opinion.

Although an ALJ must rely upon "some medical evidence" to formulate a claimant's RFC, "some medical evidence" is not limited to a medical opinion. See Anderson v. Shalala, 51 F.3d 777, 779–80 (8th Cir. 1995). Reflecting this principle, the Eighth Circuit has stated that an ALJ need not rely upon a medical opinion when formulating a claimant's RFC. See Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (there is no requirement that an RFC finding be supported by a specific medical opinion). Accordingly, the Eighth Circuit has held that an ALJ's RFC assessment was supported by substantial evidence even when there was no corroborating medical opinion. See Stringer v. Berryhill, 700 F. App'x 566, 567–68 (8th Cir. 2017).

Here, even without a supporting medical opinion, the ALJ had sufficient evidence to determine plaintiff's RFC. The ALJ's RFC assessment was supported by "some medical evidence," as detailed above. This court concludes the record evidence provided a sufficient medical basis for the ALJ to determine plaintiff's RFC.

Moreover, it is plaintiff's burden to prove RFC. See Buford v. Colvin, 824 F.3d 793, 796 (8th Cir. 2016). In this case, plaintiff points to no medical opinion or any other persuasive evidence demonstrating greater limitations than assessed by the ALJ.

### E. New Evidence

Finally, the Court on its own motion addresses whether new evidence submitted to the Appeals Council warrants remand. See Minor v. Astrue, 574 F.3d 625, 628 (8th Cir. 2009) (court on its own motion has the discretion to remand based on new evidence).

Plaintiff submitted post-hearing medical records from Mercy Hospital dated June 17 to July 5, 2016. Plaintiff was seen in the emergency room and admitted to Mercy Hospital June 17-18, 2016 after feeling light headed and faint. She reported that she had had a pacemaker placed on May 13, 2016, and began experiencing lightheadedness and weakness about two to three weeks after. She was diagnosed with chronic anemia, hypokalemia or low blood potassium levels, chest pain, and dizziness. She improved and was discharged home. (Tr. 48-54.)

On July 5, 2018, plaintiff was seen in the emergency room of Mercy Hospital with complaints of back pain. Imaging showed minimal compressive deformities in the lower thoracic spine which were most likely chronic. She was diagnosed with a compression deformity of the vertebra, most likely chronic, and osteoarthritis of the spine. She was prescribed oxycodone and valium and discharged that day. (Tr. 10-40.)

The Appeals Council must consider additional evidence if it is new, material, and relates to a time period before the ALJ's decision. See 20 C.F.R. § 404.970(b), 416.1470(b); see Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996); Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995). To be material, new evidence must be non-cumulative, relevant, and probative of a claimant's condition during the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination. See Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993). Once it is clear that the Appeals Council has considered newly submitted evidence, the court does not evaluate the Council's decision to deny review based on new evidence; instead, its role is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including new evidence submitted after the ALJ issued his decision. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995).

Here, the Appeals Council noted the ALJ decided plaintiff's case through April 13, 2016. The Council stated the additional evidence did not relate to the period at issue and therefore did not affect the decision about whether she was disabled on or before that date. (Tr. 2.) This Court agrees that the new evidence does not warrant remand here.

## VI.  CONCLUSION

For the reasons set forth above, the final decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is filed herewith.

/s/ David D. Noce  
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 18, 2018.